Filed 11/12/15  717 Nogales v. Zheng CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| 717 NOGALES, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHI ZHENG,<br><br>    Defendant and Appellant. | B258916<br><br>(Los Angeles County<br>Super. Ct. No. BC464912) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward Simpson, Judge.  Affirmed.

Law Offices of Stephen R. Wade, Stephen R. Wade and W. Derek May for Defendant and Appellant.

The Byrne Law Office and John P. Byrne for Plaintiff and Respondent.

_____

Chi Zheng appeals from the judgment entered after a bench trial on 717 Nogales, LLC's claims for breach of lease, fraud and negligent misrepresentation. The trial court found Zheng had acted in bad faith in agreeing to and signing a lease purportedly on behalf of his corporate principal, MotorScience Enterprise, Inc. (MEI), knowing MEI had dissolved nearly a year earlier and could not authorize the transaction or meet its obligations under the lease. Without challenging any of the court's factual findings, Zheng contends the court erred as a matter of law in holding him personally liable for breaching the lease. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2007 MEI entered into a lease with 717 Nogales for a term of three years. Unbeknownst to 717 Nogales, in November 2009 Zheng filed a certificate of dissolution with the Secretary of State in which he declared under penalty of perjury that MEI had been dissolved and all of its known debts paid and assets distributed. Despite MEI's dissolution, on September 1, 2010 Zheng signed a second amendment to the lease purportedly on MEI's behalf, extending the lease term for another three years, through November 30, 2013. After MEI failed to meet its rental obligations under the second amendment to the lease, 717 Nogales obtained an unlawful detainer judgment for possession and past due rent against MEI and Zheng and later filed the instant action against both of them for breach of lease, fraud and negligent misrepresentation. 717 Nogales voluntarily dismissed MEI from this action prior to trial.[1]

At trial 717 Nogales claimed Zheng was personally liable under the lease. Zheng disputed he had executed the lease and insisted a subordinate had signed his name without his authorization. In supplemental briefs submitted at the trial court's request on the issue of Zheng's personal liability, 717 Nogales argued Zheng was personally liable

---

[1] The very limited record Zheng provided on appeal does not include the lease agreement, the complaint or a transcript of the trial; and no statement of decision was requested or issued. Our factual recitation borrows liberally from the court's July 8, 2014 "ruling on submitted matter."

either as an alter ego of MEI or under Civil Code section 2343,[2] which makes an agent responsible to third parties as a principal when the agent entered into a written contract in the name of the principal without a good faith belief he or she had the authority to do so. Zheng argued he could not be held personally liable for MEI's breach of lease either under section 2343 or under various provisions of the Corporations Code. The court rejected Zheng's arguments and found he had acted in bad faith by signing the lease as an agent for MEI knowing MEI did not, and could not, authorize the transaction. The court concluded Zheng could be held personally liable under the lease agreement pursuant to section 2343 as if he were a party to the lease. The court entered judgment for 717 Nogales and against Zheng for $178,073.61, exclusive of costs and attorney fees.

## DISCUSSION

### 1. *Standard of Review*

Without challenging any of the court's factual findings, Zheng contends the court erred in finding him personally liable under section 2343. He insists other provisions of the Civil Code and the Corporations Code either prohibit holding him personally liable for an agreement he signed on behalf of his principal or limit the amount of damages for which he may be held accountable. To the extent these arguments are directed to the interpretation and application of statutes to undisputed facts, they present questions of law subject to de novo review. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) To the extent Zheng's legal arguments rest on factual assumptions in this case, however, Zheng did not request, and the trial court did not issue, a statement of decision. Accordingly, under the doctrine of implied findings, we infer all findings in favor of the judgment. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 [judgment is presumed to be correct; absent a statement of decision making specific findings, reviewing court will infer the trial court made implied factual findings on all issues

---

[2]     Statutory references are to this code unless otherwise indicated.

3

necessary to support the judgment]; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59-60.)

2. *The Court Did Not Err in Holding Zheng Personally Liable as a Principal Under the Lease Pursuant to Section 2343*

Ordinarily a personal judgment for damages for breach of contract may not be obtained against an agent who entered into a contract on behalf of a disclosed principal. (*Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1433; see *Lippert v. Bailey* (1966) 241 Cal.App.2d 376, 382 ["[w]here the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent"].) However, section 2343[3] makes an agent who enters into a contract in the name of his or her principal "without believing in good faith that he [or she] has the authority to do so" personally liable as if he or she were the principal. (*Jeppi v. Brockman Holding Co.* (1949) 34 Cal.2d 11, 18-19 ["[a]lthough one is not liable personally on a contract executed by him as the officer of a corporation, he may, if he acted without authority, be held to account on a theory of breach of the implied warranty of authority[,] Civ[il] Code, [section] 2342,[4] or, if bad faith is found, as a principal [under] Civ[il] Code sec[tion] 2343"]; *Ferroni v. Pacific Finance Corp.* (1943) 21 Cal.2d 773, 778 [same]; see *Kurtin v. Elieff* (2013) 215 Cal.App.4th 455, 458 (*Kurtin*) ["Liability under section 2343 requires either (1) the *lack* of a good faith belief on the agent's part that 'he has authority' to bind 'his principal,' or (2) an act by the agent that is 'wrongful' in its nature. Case law has equated 'wrongful' with tortious."].)

Zheng contends Civil Code section 2343 does not apply to him because, as MEI's corporate director, he was permitted to "wind up" the affairs of MEI, both before and

---

3    Section 2343 provides, "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no others:  [¶] . . . [¶]  2.  When he enters into a written contract in the name of his principal, without believing, in good faith, that he has the authority to do so; or [¶] 3.  When his acts are wrongful in their nature."

4    Section 2342 provides, "One who assumes to act as an agent thereby warrants to all who deal with him in that capacity that he had the authority which he assumes."

4

after the filing of the certificate of dissolution.  (See Corp. Code, § 1903, subd. (b) ["[w]hen a voluntary proceeding for winding up has commenced, the board shall continue to act as a board and shall have full powers to wind up and settle its affairs, both before and after the filing of the certificate of dissolution"].)  Zheng's reliance on section 1903 of the Corporations Code is misplaced.  We may infer, consistent with the court's minute order, the trial court made a factual finding that Zheng did not sign the lease as part of winding up and settling the defunct corporation's affairs but rather to shield himself from personal liability following MEI's inevitable default.  (See *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 [articulating doctrine of implied findings].)  Under those factual circumstances, which Zheng expressly does not, and cannot, challenge, Corporations Code section 1903 is not a barrier to holding Zheng personally liable for his bad faith conduct under section 2343.

> 3. *Zheng Has Forfeited the Argument His Personal Liability Is Circumscribed by Section 3318*

Section 3318 provides, "The detriment caused by the breach of a warranty of an agent's authority, is deemed to be the amount which could have been recovered and collected from his principal if the warranty had been complied with, and the reasonable expenses of legal proceedings taken, in good faith, to enforce the act of the agent against his principal."  Relying on section 3318, Zheng argues, even if he can be held personally liable on the lease, any damages for the breach of his agency warranty under section 2343 must be limited to what could actually be "recovered and collected" from MEI.  Since MEI dissolved in 2009 and has no assets, Zheng asserts, nothing can be "collected and recovered" from MEI under the contract.  In other words, because MEI is judgment proof, he is as well.

There is some question whether section 3318 applies only to innocent or good faith breaches of an agent's warranty of authority (for example, because of a misunderstanding or miscommunication between principal and agent) or applies equally to bad faith acts by the agent within the meaning of section 2343, subdivision 2.  In *Kurtin, supra,* 215 Cal.App.4th at page 482, Division Three of the Fourth District labeled

5

this question one of first impression in California and concluded, albeit in dicta, that section 3318 applied to bad faith breaches of warranty as well as innocent breaches. (*Kurtin*, at pp. 483-485 [explaining the "as principal" language in section 2343 addressed the personal liability of the agent, not the measure of damages to which he or she is accountable].)  Otherwise, the court explained, the third party who believed in the agent's warranty would be able to recover more than the benefit of his or her bargain.  (See *Kurtin*, at p. 485 ["[s]ection 3318 sets forth a measure of damages that indeed reflects the benefit of the bargain, together with the commercial risks inherent in that bargain, which Kurtin actually made," italics omitted].)

Although we have difficulty reconciling the *Kurtin* court's analysis of section 2343 with the Supreme Court's language in *Jeppi v. Brockman Holding Co., supra,* 34 Cal.2d at pages 18 to 19, quoted above, we need not determine whether section 3318 applies here or whether, contrary to the analysis in *Kurtin,* section 2343, subdivision 2, makes the agent fully liable on the entire underlying contract "as a principal" (here, for example, for breach of the agreement to pay rent), and not simply for breach of the warranty of authority.  Zheng did not raise the issue of section 3318's applicability below, and it is properly deemed forfeited.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880 [""["n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"""]; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [it is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court]; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["'[a]ppellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider'"].)

Zheng contends the issue is one of law and urges that we exercise our discretion to consider it for the first time on appeal.  (See *In re Abram L.* (2013) 219 Cal.App.4th 452, 462 [reviewing court has discretion to consider pure questions of law raised for the first

6

time on appeal]; *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1409 [same].) We decline to do so because Zheng's so-called "purely legal" argument rests on a questionable factual assumption. Even under the analysis in *Kurtin*, section 3318 would not apply if Zheng had committed a fraud. (See *Kurtin, supra,* 215 Cal.App.4th at p. 486 [section 3318 does not limit damages "in cases where the purported agent's breach of his or her implied warranty of authority comes under one of the two other subdivisions of section 2343, namely receiving credit personally, or is combined with his or her own independent tort"]; see also *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 230 ["[a]n agent or employee is always liable for his or her own torts, whether the principal is liable or not, and in spite of the fact that the agent acts in accordance with the principal's directions"]; *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68-69 [same].) Recognizing this limitation, Zheng insists 717 Nogales abandoned its fraud claim at trial and, as a result, the court made no findings of fraud. Other than Zheng's own assertions, however, nothing in the record affirmatively supports this characterization. Moreover, even if 717 Nogales did elect to abandon its fraud claim at some point, had Zheng raised the section 3318 issue in a timely fashion in the trial court, 717 Nogales may well have advanced its fraud claim to counter that argument, as it vigorously does on appeal. Under these circumstances we decline to exercise our discretion to consider the issue for the first time on appeal. (See *Rayii,* at p. 1409 [although reviewing court has "the discretion to consider for the first time on appeal an issue of law based on undisputed facts," "we will not consider a new issue where the failure to raise the issue in the trial court deprived an opposing party of the opportunity to present relevant evidence"].)

4. *Corporations Code Section 2011 Does Not Foreclose This Action or Provide the Sole Remedy for MEI's Default in These Circumstances*

Zheng alternatively contends Corporations Code section 2011, subdivision (b), which permits a creditor of a dissolved corporation to hold shareholders personally liable for their respective shares of the dissolved corporation's distributed assets, provides the

7

exclusive remedy for holding Zheng personally liable in this case.[5] He misapprehends the nature of the statute and 717 Nogales's claim. Although 717 Nogales could have proceeded against MEI and recovered against Zheng personally as MEI's shareholder if Zheng had received assets from MEI following its dissolution (see Corp. Code, § 2011, subd. (b)), that course of action was not its only remedy. As the trial court recognized, the gravamen of 717 Nogales's action was against Zheng for his own fraud and bad faith, making him personally liable for his own wrongful conduct independent of MEI's liability or Zheng's status as MEI's former shareholder.

**DISPOSITION**

The judgment is affirmed. 717 Nogales is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.

---

[5]     Corporations Code section 2011 provides, "(a)(1)  Causes of action against a dissolved corporation, whether arising before or after the dissolution of the corporation, may be enforced against any of the following:  [¶]  (A)  Against the dissolved corporation, to the extent of its undistributed assets . . . .  [¶]  (B)  If any of the assets of the dissolved corporation have been distributed to shareholders, against shareholders of the dissolved corporation to the extent of their pro rata share of the claim or to the extent of the corporate assets distributed to them upon dissolution of the corporation, whichever is less."